UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                                    CRIMINAL NO. 2:11-cr-34

MUHIDIN SALAD OMAR,

Defendant.

## OPINION

This matter comes before the court on Defendant's pro se "Motion to Compel Enforcement of Court Order and for Compassionate Release and for Reduction under Amendment 821"[1] ("Motion"), filed on February 29, 2024. ECF No. 1275. The United States opposes the Motion, ECF No. 1301, and the court addresses the Motion and opposing arguments herein. For the reasons explained below, Defendant's Motion to Compel Enforcement of Court Order is **DENIED**, and Defendant's Compassionate Release Motion is **DENIED**.

## I. PROCEDURAL HISTORY

On May 25, 2011, Defendant pled guilty to one count of piracy under the law of nations, in violation of 18 U.S.C. §§ 1651 and 2. ECF No. 203 (Plea Agreement). On October 3, 2011, the court held a sentencing hearing and considered the statutory sentencing factors under 18 U.S.C. § 3553(a). ECF No. 331 (Sentencing

---

[1] On May 3, 2024, the court issued an Order denying Defendant's Motion for Reduction under Amendment 821. See ECF No. 1288.

Hearing). The court sentenced Defendant to a mandatory statutory term of life imprisonment. <u>See</u> ECF No. 337 (Judgment). Defendant is currently incarcerated at the United States Penitentiary, Coleman II.[2]

Defendant's instant Motion, filed <u>pro se</u>, was docketed on February 29, 2024. ECF No. 1275. On April 17, 2024, the court ordered the United States to respond to Defendant's Motion, requiring the United States to "address whether Defendant has exhausted his administrative remedies, include all pertinent documents from the Bureau of Prisons ('BOP'), and explain whether the United States opposes Defendant's Motion." ECF No. 1280 at 2-3. On June 17, 2024, the United States filed a Response in Opposition. ECF No. 1301 ("Response"). Defendant filed a Reply on June 27, 2024.[3] ECF No. 1309. This matter is now ripe for judicial decision.

### II. MOTION TO COMPEL ENFORCEMENT OF COURT ORDER

Defendant asserts that on September 26, 2011, the government recommended a sentence of five (5) years, followed by deportation, in its position paper. <u>See</u> ECF No. 1275 at 1-2. Defendant further

---

[2] Bureau of Prisons ("BOP"), <u>Find an inmate</u>, https://www.bop.gov/inmateloc/.

[3] The court accepts the Reply as effectively filed on the date the Defendant certifies he placed it in the prison's internal mailing system, which is June 27, 2024. <u>See Johnson v. United States</u>, 2013 WL 12097823, at *1 (E.D. Va. Sept. 9, 2013) (Smith, J.) (citing <u>Houston v. Lack</u>, 487 U.S. 266 (1988) (articulating the "prison mailbox rule")).

asserts that the government made the same recommendation at Defendant's sentencing hearing and that the court adopted this recommendation. See id. at 2 ("The sentence and deportation to Africa was agreed to by U.S. Government A.U.S.A. Brian James Samuels, U.S. District Court Judge Mark S. Davis and issued in the order of the court."). The court has independently reviewed the government's position paper, ECF No. 323; the transcript, ECF No. 1215, and courtroom minutes, ECF No. 331, from the sentencing hearing; as well as the judgment, ECF No. 337, and found no evidence of Defendant's claims. Page two (2) of the judgment clearly states: "The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **LIFE**." ECF No. 337 at 2 (emphasis in original). The government's recommendation states that "[t]he piracy count of conviction to which the defendant pled guilty carries a mandatory penalty of life imprisonment" and that "[t]he facts of this case certainly warrant such a sentence." ECF No. 323 at 4. Finding no evidence of Defendant's claims, the court **DENIES** Defendant's Motion to Compel Enforcement of Court Order.

### III. MOTION FOR COMPASSIONATE RELEASE

#### A. Exhaustion of Administrative Remedies

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court may modify a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." Before the court may

consider such motion, however, the defendant must have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or there must have been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that defendants may satisfy this exhaustion requirement by "wait[ing] 30 days from the date of their initial request to file a motion in the district court," even if the warden has already responded to their request. United States v. Muhammad, 16 F.4th 126, 131 (4th Cir. 2021) (collecting cases). The court further clarified that the exhaustion requirement "is a non-jurisdictional claim-processing rule," and therefore "may be waived or forfeited." Id. at 130.

In his Motion, Defendant asserts that he submitted a request for compassionate release "to the Unit Team/Warden using F.B.O.P. Authorized form 50.50." ECF No. 1275 at 4. In its April 17, 2024, Order Directing the United States to Respond, the court noted that "Defendant does not specify when he submitted this request." ECF No. 1280 at 2. The court further directed the United States to "address whether Defendant has exhausted his administrative remedies[.]" Id. In its Response, the United States conceded that Defendant "exhausted his administrative remedies with the Bureau of Prisons." ECF No. 1301 at 1 n.1. Accordingly, Defendant is

4

deemed to have satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A).

### B. Merits

As a general matter, a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, Congress created an exception to that general rule allowing the court to reduce a defendant's sentence when "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Evaluating a motion for compassionate release under § 3582(c)(1)(A)(i) is a two-step inquiry. The court must first determine: "(1) whether extraordinary and compelling reasons warrant such a reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission." United States v. Malone, 57 F.4th 167, 173 (4th Cir. 2023). If so, the court may then "grant the motion if (3) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release." Id. The Fourth Circuit has reaffirmed the importance of performing the analysis in two discrete steps. In United States v. Osman, the court held that the district court had "impermissibly collapsed the threshold 'extraordinary and compelling reasons' inquiry into its consideration of the 18 U.S.C. § 3553(a) factors." 2024 WL 3633573, at *3 (4th Cir. 2024). Accordingly, Defendant is only entitled to

compassionate release if he shows both (1) an extraordinary and compelling reason, and (2) that the § 3553(a) factors favor his release.[4] Id.

### 1. Extraordinary and Compelling Reasons

In determining whether Defendant has presented an extraordinary and compelling reason, the court looks to those reasons outlined in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13(b) ("Policy Statement"). Stated categorically, these include:

    (1) Medical Circumstances of the Defendant;
    (2) Age of the Defendant;
    (3) Family Circumstances of the Defendant;
    (4) Victims of Abuse while Incarcerated;
    (5) Other Reasons (the "catchall" provision); and
    (6) Unusually Long Sentence (change of law).

Id. The court's findings must be "consistent with" the Policy Statement. 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant must show an extraordinary and compelling reason under the framework established in the Policy Statement. See United State v. Hart, 2024 WL 3974230, at *2 (E.D. Va. Aug. 28, 2024) (Trenga, J.) (finding that because § 1B1.13(b) is a policy statement, "a

---

[4] The court in Osman clarified that the two steps need not be distinct in content, but merely in application. The court noted that "a court is entitled to consider facts during the first step of the compassionate release analysis—i.e., extraordinary and compelling reasons—and then again consider those facts in weighing the § 3553(a) factors at the second step." Osman, 2024 WL 3633573, at *4 n.7. "The court should not, however, conflate the separate steps. It should address the inquiries individually and sequentially." Id.

defendant seeking modification of his or her sentence must identify one or more of the enumerated extraordinary and compelling reasons as a basis for release").

### a. Parents' Failing Health

Defendant argues that his parents' failing health qualifies as an extraordinary and compelling reason under § 1B1.13(b)(3)(C). This section provides that "the incapacitation of the defendant's parent when <u>the defendant would be the only available caregiver</u> for the parent" may qualify as an extraordinary and compelling reason. § 1B1.13(b)(3)(C) (emphasis added).

In applying this provision, courts have held it is insufficient that a "family situation is undoubtably difficult and puts a strain on [the defendant's] non-incarcerated relatives." <u>United States v. Rives</u>, 2023 WL 496192, at *9 (E.D. Va. Aug. 3, 2024) (Lauck, J.). Rather, the Defendant must provide "evidence, beyond his own assertion, that he is the <u>only</u> available caregiver[.]" <u>Id.</u> (emphasis in original) (citing <u>United States v. Holt</u>, 2021 WL 2457064, at *6 (E.D. Va. June 16, 2021) (Alston, J.)).

Defendant does not make this showing. The only evidence Defendant offers "that he is the <u>only</u> available caregiver" is his own affidavit. ECF No. 1309 at 15. Since he has not offered evidence "beyond his own assertion," this cannot serve as an extraordinary and compelling reason for Defendant's release. <u>See</u>

7

Rives, 2023 WL 496192, at *9 (finding that the defendant's assertation that he is the only available caregiver is not an extraordinary and compelling reason because "he offers no corroboration of this assertion"); United States v. Levin, 2024 WL 4100871, at *3 (E.D. Va. Sep. 6, 2024) (Giles, J.) (same).

### b. Sentencing Disparity Between Codefendants

Defendant also asserts that his sentence is unusually long such that there is a gross disparity when compared with similarly situated defendants. While no provision in the policy statement covers this specific argument, courts have found that such a disparity may constitute a sentence of "sheer and unusual length" and qualify as an extraordinary and compelling reason under § 1B1.13(b)(5) (the "catch-all provision").[5] See United States v.

---

[5] The "catchall" provision preserves the court's broad discretion to consider any proposed extraordinary and compelling reason not otherwise disallowed under § 1B1.13. See United States v. Brown, 706 F. Supp. 3d 516, 519 (D. Md. 2023) ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release."). Because the catchall provision was meant to preserve the discretion inherent to the pre-amendment application of § 3582(c)(1)(A)(i), the court will continue to consider pre-amendment case law under § 1B1.13(b)(5) to the extent it is consistent with other provisions of the policy statement. See id. ("Indeed, the catchall provision is a nod to McCoy, and other similar precedents, indicating that it is intended to largely maintain the status quo."); see also Delavan v. United States, 2024 WL 2958956, at *3 (E.D. Va. June 12, 2024) (Jackson, J.) (quoting McCoy, 981 F.3d at 284) ("This catchall provision allows courts to continue to exercise discretion in considering 'any extraordinary and compelling reason for release that a defendant might raise.'")).

_Brown_, 78 F.4th 122, 131 (4th Cir. 2023) (considering the disparity between the defendant's sentence and codefendants' sentences in considering the "sheer and unusual length" of defendant's sentence); _United States v. Johnson_, 2023 WL 5049267, at *10 (E.D. Va. Aug. 8, 2023) (Trenga, J.) (similar). However, even where this theory is premised on a sentencing disparity between a defendant and his codefendants, the codefendants must still be similarly situated to the defendant. See _United States v. Millner_, 2023 WL 2457094, at *2 (D. Md. Mar. 10, 2023) (denying compassionate release motion where codefendants who received shorter sentences were not similarly situated to the defendant).

Thus, to establish a sentencing disparity, the defendant must provide an appropriate comparator. This showing goes to the heart of sentencing. Simply comparing two defendants' sentences unmoored from the underlying facts is "treacherous because each sentencing proceeding is inescapably individualized[.]" _United States v. Rivera-Santana_, 668 F.3d 95, 105 (4th Cir. 2012). "Such individualized treatment is necessary 'to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" _Id._ (quoting _Gall v. United States_, 552 U.S. 38, 52 (2007)). Identifying a proper comparator embodies the individualized nature of sentencing and allows the

court to assess whether a sentence is truly of "sheer and unusual length."

The statutory sentencing factors are helpful in identifying an appropriate comparator. Pursuant to 18 U.S.C. § 3553(a)(6), courts have a duty to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. To establish that he has been subjected to an unwarranted disparity then, a defendant must, at the very minimum, show that a codefendant with a similar record who has been found guilty of similar conduct received a lesser sentence for that conduct.

Defendant identifies two codefendants as appropriate comparators— ██████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████ ████████████████████████████████████ ██████████ Like Defendant, both codefendants were originally sentenced to life imprisonment. ████ Unlike Defendant, their sentences were later reduced . . . ████████████ ██████████████████████ The government urges the court to find Defendant's comparison is inappropriate based on this fact alone. ████████████████ While this is a

_____

████████████████████████████████████████
██████████████████

10

relevant difference, ████████ [it] is but one factor in identifying an appropriate comparator and assessing the validity of a sentencing disparity. ████████████████████████



Rather, the court should make the comparison looking at all relevant characteristics. As noted, the most important factors are a defendant's conduct and criminal history. See United States v. Cornish, 2023 WL 6961935, at *18 (D. Md. Oct. 19, 2023) (finding that codefendants were not similarly situated to the defendant because, unlike codefendants, the defendant had a significant criminal history); United States v. Eccleston, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021) (finding a disparity where a defendant received a harsher sentence than more culpable codefendants). Defendant makes no attempt to show either. This showing is essential, "because each sentencing proceeding is inescapably individualized[.]" Rivera-Santana, 668 F.3d, at 105. Additionally, Defendant "asserts that the release years of four of his codefendants is 2036, 2037, 2039, and 2042 and all of these codefendants were much more culpable than Mr. Omar." ECF No. 1309 at 5. However, Defendant does not identify these codefendants

(there are a total of fourteen (14) codefendants in this case), nor does he explain why they are more culpable, or make any other comparison.[7]

Defendant seems to claim that he is less culpable by asserting that he was already in United States Navy detention when the murders occurred. As the court later notes, this is misleading. Defendant acted as the pirates' negotiator and was only detained by the Navy after he failed to negotiate a surrender of the American hostages. See discussion infra Section II.B.2. at 20-21. Even if Defendant's characterization was accurate, this fact alone would not explain why he is less culpable than his codefendants, as he gives no details as to their role, conduct, or who they are. Id. at 5, 12. Without such details, the court cannot make a comparison. The burden is on the Defendant to establish his claim, and he has not done so. See United States v. Locust, 591 F. Supp. 3d 12, 18 (E.D. Va. 2022) (Smith, J.). Accordingly, Defendant has failed to provide an appropriate comparator and thus cannot show

---

[7] Indeed, each codefendant's relative culpability is often the court's lodestar when determining whether a sentencing disparity is warranted. Compare United States v. Sappleton, 2021 WL 598232, at *1, *3 (D. Md. Feb. 16, 2021) (finding that a sentencing disparity between a conspiracy leader and less culpable co-defendants gave rise to an extraordinary and compelling reason), with United States v. Deiguez, 2024 WL 2808656, at *4 (W.D.N.C. May 31, 2024) (finding that the disparity between the defendant and his co-defendants was warranted given his leadership role in the conspiracy).

that there is an unwarranted sentencing disparity between himself and similarly situated codefendants.

### c. Unusually Long Sentence and Change in Law

Defendant also argues that his sentence creates an extraordinary and compelling reason under § 1B1.13(b)(6). Though titled "Unusually Long Sentence," § 1B1.13(b)(6) is better characterized as the exclusive means through which courts may find that a change of law, in and of itself, presents an extraordinary and compelling reason. Under § 1B1.13(b)(6), a court may find that such a change is an extraordinary and compelling reason when: (1) "a defendant has received an unusually long sentence and has served at least 10 years," (2) there has been a "change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive)," and (3) "such change would produce a gross disparity between the sentence being served and the sentence likely imposed at the time the motion is filed[.]" § 1B1.13(b)(6). The policy statement makes clear that this is the only means of considering a change in the law. See § 1B1.13(c) ("Except as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exits under the policy statement."); see also United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024) ("If the intervening change in law would not produce a gross disparity, a

defendant cannot rely on the change of law as an extraordinary and compelling reason for relief.").

The government rightly contends that Defendant has not met the requirements of § 1B1.13(b)(6). Although Defendant meets the threshold requirement of being incarcerated for at least ten (10) years, Defendant does not reference any change in the law which creates a "gross disparity." Defendant appears to assert that Amendment 821 meets these criteria. See ECF No. 1275 at 4. While courts have recognized that Amendment 821 can be a qualifying change in the law under § 1B1.13(b)(6), its application must still create a gross disparity between the sentence the defendant received and the sentence they would receive under the Amendment to constitute an extraordinary and compelling reason. Compare Hart, 2024 WL 3974230, at .*6 (finding that Amendment 821 was a retroactive change in law which created a "gross disparity," as defendant's original sentence was 51 months, but when applying Amendment 821, the applicable Guidelines range for the same conviction is 9-15 months); with United States v. Davis, 2024 WL 3385138, at *3 (D.S.C. July 12, 2024) (finding that although Amendment 821 is a retroactive change in law, it does not create a gross disparity because it does not change the guideline range for defendant's conviction). This court has already found that

14

Amendment 821 does not affect Defendant's sentence.[8] ECF No. 1288. Accordingly, Defendant has not shown that Amendment 821 creates a "gross disparity" between the sentence he received and the sentence he would receive today. As such, this cannot serve as an extraordinary and compelling reason under § 1B1.13(b)(6).

Defendant also asserts that a hodgepodge of recent Circuit and Supreme Court caselaw creates a gross disparity. Specifically, Defendant appears to cite: United States v. Taylor, 596 U.S. 845 (2022); United States v. Davis, 588 U.S. 445 (2019); Dubin v. United States, 599 U.S. 110 (2023); United States v. Rahimi, 602 U.S. 2688 (2024); Range v. Att'y Gen. United States of Am., 69 F.4th 96 (3d Cir. 2023) (en banc), cert granted, judgment vacated sub nom, Garland v. Range, 144 S.Ct. 2706 (2024); Ruan v. United States, 597 U.S. 450 (2022); New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022); Rehaif v. United States, 588 U.S. 225 (2019). Defendant provides no explanation as to how these cases create a gross disparity. Indeed, they do not appear to be applicable. Defendant was sentenced under 18 U.S.C. § 1651, which provides: "Whoever, on the high seas, commits the crime of piracy as defined by the law of nations, and is afterwards brought into or found in the United States, shall be imprisoned for life." (Emphasis added). None of the cases Defendant cites have any

---

[8] See supra note 1.

bearing upon how this statue is applied. Irrespective of these cases, Defendant would still be subject to a mandatory life sentence. Accordingly, Defendant has not shown that an intervening change in law creates a "gross disparity" between the sentence he received and the sentence he would receive today, and thus has not shown an extraordinary and compelling reason under § 1B1.13(b)(6).

### d. Other Factors

Lastly, Defendant offers a smorgasbord of factors that, when taken together, purportedly constitute an extraordinary and compelling reason under § 1B1.13(b)(5). ECF No. 1309 at 6. These include his "deteriorating mental health," that he has been incarcerated for over ten (10) years, that three (3) of his years incarcerated where under "extremely and incredibly harsh conditions due to covid 19," his parents' failing health, his rehabilitation efforts, and sentencing disparities between himself and his codefendants. Id.

None of Defendant's arguments, either separate or together, constitute an extraordinary and compelling reason for compassionate release. Nonetheless, the court will address each argument in turn, not including Defendant's arguments regarding his parents' health and sentencing disparities among codefendants, as the court has already found them without merit.[9]

---

[9] See discussion supra Section III.B.1.a, at 7-8; Section III.B.1.b, at 8-12.

16

Defendant first asserts that he has "deteriorating mental health." While a defendant's medical conditions can constitute an extraordinary and compelling reason, this is generally only when a defendant can show that his condition is either "terminal . . . with an end of life trajectory" or "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." United States v. Talens, 2024 WL 1774813, at *2 (E.D. Va. Apr. 24, 2024) (Young, J.) (citing § 1B1.13, application note 1(A)). Defendant merely asserts that his condition would be improved through care outside incarceration. This is not enough. Defendant must, at a minimum, explain why his current treatment is insufficient and how it would be improved upon release. See e.g., Untied States v. Logan, 2023 WL 5155746, at *3 (D.S.C. Aug. 10, 2023) (finding that Defendant's failed to explain "how the list of medications provided are insufficient to treat her conditions, or how she might receive improved care upon release"); United States v. Ayyad, 2024 WL 3424083, at *7 (D. Md. July 15, 2024) (finding that Defendant failed to show that his chronic condition could not be managed in prison). Because Defendant has failed to meet this burden, the Court finds that his health conditions are not an extraordinary and compelling reason.

Defendant also notes that he has served over ten (10) years in incarceration and that three (3) of those years were under

"extremely and incredibly harsh conditions due to covid 19." The court can find no reason that serving thirteen (13) years of a life sentence would be extraordinary and compelling. Time served is generally only relevant when a defendant's sentence is nearly complete. _See, e.g.,_ United States v. Garcia, 2024 WL 1722190, at *3 (W.D.N.C. Apr. 22, 2024) (finding that although the short time remaining on defendant's sentence favored compassionate release, this was ultimately outweighed by his extensive criminal history and serious conviction). Similarly, Defendant fails to show that his conditions while incarcerated during the pandemic warrant special attention. Courts have found that "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release." United States v. Hall, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) (quoting United States v. Hatcher, 2021 WL 1535310, at *3-4 (S.D.N.Y. Apr. 19, 2021)). Accordingly, the court finds Defendant's argument regarding his time served, with intervening COVID-19 conditions, without merit.

Lasty, Defendant argues that his rehabilitation while incarcerated is an extraordinary and compelling reason. The court first notes that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but that "rehabilitation . . . may be considered in combination with other circumstances[.]" § 1B1.13(d). While the court credits Defendant

for his completion of various programs while incarcerated, as well as his clean disciplinary record, these facts are not so compelling, even when considered alongside others, as to constitute an "extraordinary and compelling" reason. See, e.g., United States v. Washington, 2023 WL 2796486, at *6 n.2 (E.D. Va. Apr. 5, 2023) (Alston, J.) ("[R]ehabilitation forms one of the many baselines as to what prisoners are supposed to do while incarcerated.") (quoting Locust, 591 F. Supp. 3d at 25); United States v. Burale, 2022 WL 1439663, at *6-7 (E.D. Va. May 6, 2022) (Smith, J.) (finding defendant satisfied the mere baseline expectation by completing twenty (20) educational courses, having a job while incarcerated, completing a drug education program, and having no disciplinary infractions for several months).

None of Defendant's arguments, either individually or taken together constitute an extraordinary and compelling reason for granting compassionate release. Accordingly, Defendant has failed to show an extraordinary and compelling reason. For this reason, his Motion for Compassionate Release is **DENIED**.

## 2. Section 3553(A) Factors

Since Defendant has not provided an extraordinary and compelling reason justifying relief, the court need not reach the 18 U.S.C. § 3553(a) sentencing factors. See Smith, 2024 WL 126994, at *4 n.9 (citing Malone, 57 F.4th at 174) (declining to address the § 3553(a) factors where the defendant failed to show an

extraordinary and compelling reason). However, the court elects to briefly address the § 3553(a) factors to underscore why relief would be inappropriate. At this juncture, it is worth reviewing the specific facts of Defendant's case.

Defendant was one of nineteen pirates who hijacked a United States flagged vessel, the sailboat Quest, with high-powered firearms; held the four Americans on board hostage over the course of days; and attempted to bring the hostages back to Somalia for ransom. See ECF No. 314 at ¶¶ 28-31 (Presentence Investigation Report). Following a standoff with the United States Navy, which was attempting to rescue the hostages and secure the Quest, one pirate fired a rocket-propelled grenade toward a Navy ship and the pirates thereafter began firing weapons from the Quest. Id. at ¶ 32. Soon after, a group of Navy SEALs boarded and secured the Quest, but the pirates had already killed all four American hostages. Id.

Defendant attempts to distance himself from the more heinous aspects of the crime by asserting that he was already detained at the time of the murders. ECF No. 1309 at 5. Defendant's narrative leaves out a key detail—Defendant was acting as the pirates' negotiator and the Navy only detained him after he refused to give up the hostages. ECF No. 314 at ¶ 27. Defendant was steadfast in his refusal, despite the Navy promising safe passage for both him and the other pirates to Somalia, if he acquiesced. Id. As the

court noted during sentencing, Defendant's refusal "displayed a callous disregard for the hostages as merely shields to avoid capture and responsibility[.]" ECF No. 1215 at 19 (Sentencing Transcript).

Defendant's characterization of his involvement also ignores how his and each pirate's actions "set the stage for the murders of these four victims." Id. By its very nature, piracy requires a coordinated effort. This concert of action is violent by design, and all too often reaches a crescendo resulting in the death of innocent people.[10] Simply put, Defendant and his confederates "had to understand the possibility of what could happen as a result of their criminal conspiracy." Id. That Defendant did not himself kill anyone "in no way excuses the action of engaging in piracy," an action he knew put others at extreme risk. Id. at 18. He was chosen to be the pirates' negotiator with the United States Navy, a crucial role in this scenario. See ECF No. 314 at ¶ 26. As negotiator, he then put all at risk in his refusal to engage in any action to bring the matter to a conclusion without death or further violence. Id. at ¶ 27.

---

[10] While piracy-related violence has declined in recent years, pirates killed at least thirty-five (35) hostages in 2011, the year in which Defendant engaged in piracy. See Peter Apps, Somali Piracy Death Toll Rises as Violence Worsens, Reuters.com (June 22, 2012 3:08 AM), https://www.reuters.com/article/world/somali-piracy-death-toll-rises-as-violence-worsens-idUSBRE85L08N/. This includes the four (4) individuals killed aboard the Quest.

The seriousness of Defendant's conduct cannot warrant compassionate release when the Defendant has served only a relatively small portion (13 years) of his life sentence. See, e.g., United States v. Kibble, 992 F.3d 326, 331 (4th Cir. 2021) (affirming district court's denial of compassionate release based in part on consideration of the amount of time already served). Releasing the Defendant at this point would fail to reflect the seriousness of the offense, promote respect for the law, or provide adequate deterrence. See 18 U.S.C. § 3553(a). For these reasons, even if this court were to find that Defendant presented an "extraordinary and compelling" reason, the court would deny his motion for compassionate relief under the § 3553(a) factors.

### C. CONCLUSION

In sum, Defendant's sentence remains "sufficient, but not greater than necessary," to achieve the aims of 18 U.S.C. § 3553(a). He has not shown legal or factual justification for compassionate release, nor "extraordinary or compelling" circumstances to so justify.

For the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 1275, is **DENIED**. The Judgment entered on October 5, 2011, ECF No. 337, remains in full force and effect.

22

The Clerk is **DIRECTED** to forward a copy of this Opinion to Defendant, the United States Attorney at Norfolk, and the Bureau of Prisons.

IT IS SO ORDERED.

11-14-24

/s/

Rebecca Beach Smith
Senior United States District Judge